We're here for United States v. Cifuentes-Lopez, and this is 24-6177. Ms. Shen, you may begin. Good morning, your honors, and may it please the court. My name is Kathleen Shen, and I represent the appellate, Mr. Rolando Cifuentes-Lopez. The law in the circuit is clear. To obtain restitution under the TVPRA, the government has to prove that the defendant's offense of conviction was a but-for cause of the loss being compensated. But in a child sex trafficking case where the victim has been abused by multiple perpetrators or as a result of multiple offenses, the government has the burden of isolating the losses that were caused by the defendant's offense of conviction from other losses caused by other perpetrators or other offenses. That didn't happen here. Isn't that precisely why the government got Ms. Wong's report was to isolate the post-trafficking trauma losses attributable to Mr. Cifuentes-Lopez? Your honor, I don't think Dr. Wong's report does the work of isolating the post-trafficking trauma losses attributable to Mr. Cifuentes-Lopez. What Dr. Wong does is she first applies accounting principles to Dr. Misar's evaluation, which has nothing to do with causation. And then she does estimate the losses that were due to pre-trafficking trauma versus post-trafficking trauma. But what she doesn't do is isolate the amount of the post-trafficking losses that would not have occurred but for Mr. Cifuentes-Lopez's offenses. As she flatly testified at the restitution hearing, she could not link the amounts to his direct actions. That's in, I think, Record Volumes 3, 337. She just admits she doesn't know how much of the losses that she estimated were caused by Mr. Cifuentes' offense. And, you know, she does come up with a number that she assigns to Mr. Cifuentes. But again, that number was not a calculation of how much of the losses were directly caused by Mr. Cifuentes' offense. Rather, what she does is she calculates that he's going to serve 26% of the prison time in this case. And then she says he should pay 26% of the losses. There's no attempt to- The district court didn't adopt that. That's correct. But the district- My question is, is this a direct application of Anthony 1 and 2, or is this an extension? Because in Anthony, we required this disaggregation of pre-trafficking and post-trafficking trauma. It seems here you're asking for another step, which is to isolate even further the post-trafficking trauma after it's been disaggregated from the pre-trafficking. Is this an extension of Anthony or a direct application of the case? I don't think it's an extension, Your Honor. I think it's a direct application. To the extent that Anthony is talking about pre-trafficking and post-trafficking trauma, that's because there the different offenses are occurring sequentially, whereas here, you know, the multiple defendants are all being prosecuted at the same time. But in both circumstances, and I think Anthony 1 and 2 are clear, what has to be shown is a direct causal link between the defendant's offense of conviction and the amount of restitution being requested. And here, the pre-trafficking and post-trafficking trauma doesn't do that work because it's undisputed. It's completely open from Dr. Misar's report that the post-trafficking trauma or the trafficking trauma that he's calculating is an amount that results from all four defendants' offenses, and there is no attempt whatsoever to isolate which portion of that loss is caused by each defendant. It doesn't appear anywhere in Dr. Misar's report. So, if I understand your argument, and I'm getting a little stuck on how 3664H fits in. So, if the district court were to have done it right, in your view, it would have either discerned a direct, but for a number, and then proceeded to 3664H, right? That's the sequencing that you're suggesting did not happen, but should have happened. Is that right? Your Honor, I don't think 3664H has any application in a case like this, where the defendants' offense of conviction. Okay, say more about that. So here, you know, 3664H is really a statute that's about a case in which you have multiple defendants whose offenses of conviction are causing the same harm. So, the prototypical example would be a conspiracy, right? And if Mr. Cifuentes-Lopez had been convicted of conspiring to sex traffic these victims with their mother, you know, the alternate theory that the government put forth, and it's assuming it's undisputed it's the same conspiracy, then, you know, those two defendants would be liable in restitution for all the losses resulting from that conspiracy, and they would be a but-for cause, right? There is a restitution order, they're liable. Then, in that situation where you have multiple defendants who are the but-for cause of the same harm, the district court has two options. They can either hold them jointly and severally liable, or the district court has the discretion to order some defendants to pay less based on relative culpability or ability to pay. But where there isn't that shared causal, you know, where you're not in that situation, where they're not both responsible for the same restitution loss, I think 3664H just isn't relevant. And since, in this case, Mr. Cifuentes-Lopez's offensive conviction is just the single instance of patronizing the sex trafficking victims one time each, there's not really any defendant he shares his loss with. I think conceptually, you know, you could say that if the mother had been ordered to pay the total amounts of restitution, that would, you know, there would be a small amount that might overlap. So just to be clear, I wasn't getting this from your brief, but I think that your response is addressing my question. Is it your position, then, that if you prevail on your argument that either the record and show the government did improve, there's an absence of but-for cause here for your client to support restitution? 3664H just is not relevant. It doesn't serve as a proxy for but-for causation, nor is it relevant here where there is not a conspiracy count. That's right, Your Honor. I would agree with that. Does there have to be an adjudication of guilt for conspiracy, or can relevant conduct serve as an adequate substitute? So it's clear that it has to be based on the offensive conviction. So relevant conduct isn't part of the restitution calculation that comes from- And is that- and why is that? I just, I don't mean to interrupt Judge Bacharach, but I had a- why is that? Why is the offensive- the relevant conduct- is it because it's not in the plea? Your Honor, it comes from the Supreme Court's decision in Huey, which this court, you know, and I think the exact language, I just want to get it right, because I think it's very helpful, is legally restitution is owed only for losses caused, and I'm quoting here, by the specific conduct that is the basis of the offensive conviction. That's this court's decision in Mendenhall, 945 Federal 3rd at 1266. And again, they're quoting the Supreme Court's decision in Huey. And I think Anthony wanted to both specifically refer to the offensive conviction. To get to Judge Bacharach's question, I think it's, you know, there could theoretically be a situation where you have conspiracy-like liability, where two defendants' offensive conviction are causing the same harm that's not charged as a conspiracy. But I think generally, this is really 3664H is for the conspiracy-type situation where multiple defendants' convictions cause the same harm. Does that answer your question, Your Honor? It does. Do you mind if I ask another? Judge Rossman, were you going to ask something? No. Can I ask a question? I don't want to throw you off track, Ms. Shin, but, um, you know, in Anthony too, my memory was Judge Harts wrote a dissent, uh, you know, saying, this is an impossible burden. I mean, how in the world do you do, uh, this? You make a very compelling argument that, yeah, there's no way that a judge could look at, uh, uh, Dr. Messar and Dr. Wong's analyses and say, okay, well, this is how much of the future treatment for these two young girls is going to be attributable to these one-time sexual, I mean, uh, not to minimize it, they were very serious, but these, uh, you know, two sex, you know, totally improper criminal, uh, sexual, uh, uh, incidents, you know, with these two very young girls, what, what could the government have presented in order to satisfy the burden under, at least under Anthony too? Your Honor, I think there's, I've got two responses, one sort of general, um, and I think kind of embedded in this, your question is something I'd like to push back which is the fact that we have this appeal shows this is really hard. And I just don't think that's necessarily the case. I mean, Anthony one, Anthony two in this case all come from the same office and they all involve the same experts. So I don't think it's necessarily evidence that there's like a broader systemic problem with finding restitution in these cases. But to your second point, I think Anthony two, you know, footnote 13 on page 953, you know, it states the government could have by presenting an expert who apportioned some loss amount to the one-time abuse and under a but-for causation standard. And they cite to the human trafficking institute, um, amicus that was filed in that case. And again, you know, I'm not, I'm just a lawyer. I'm not an expert in how you would estimate these damages, but I think it's, you know, certainly conceivable that there's some methodology where you could reasonably estimate just the increased harm or the increased risk that the victim suffered as a result of this additional trauma. You know, I would observe that there certainly is a body of scholarship about, for example, the number of adverse childhood experiences and the harms, you know, how that increases the harms to the victim. And, you know, I assume that there's some way, or I think at least this court can't assume there is no way to estimate that with a reasonable amount of precision sufficient to satisfy the Let me just play devil's advocate, but your answer is very good. But, uh, let's assume that Judge Hartz was right, that this is outside, uh, the capability of psychological expertise today. And so then if there was a satisfaction of that footnote and let's say Dr. Bissar, you know, gave that sort of testimony, uh, then we really would be in no different position than we are now where a judge might say, okay, um, I, you know, it's hard, like you said, it's hard, but not necessarily impossible. I know what the mother did. Uh, I know what these other, you know, this other individual did at perpetuating the sex trafficking ring. But, uh, I, as a lay person, as a judge can say, well, this one time, let's say with DH, this one time sexual, uh, incident, would, would cause, let's say 14% of DH's future medical costs. Um, and coupled with the deferential standard of review for factual findings, why, why would that be outside the domain of a, of a judge? Uh, if Judge Hartz is right, that, that, that, uh, psychological expertise isn't at that level today. Well, your honor, I don't think this court could affirm on that theory. I mean, that's exactly what was rejected in Anthony one. What you're proposing is essentially the para line, um, sort of rough division of the app, like of the harm in a case where, but for cause is really impossible. Um, and again, I don't accept that that's impossible here, but, you know, I take your question as is, I think, um, you know, looking at the child pornography restitution issue and how it's proceeded post para line, I think, you know, Congress amended the statute to just set a statutory amount, but the statute that we have here currently provides for results from, for direct or but for causation. And so both under this court's prior decisions and, you know, just applying ordinary, um, principles of statutory interpretation, I think, but for causation is required. And to the extent that leaves some gap, uh, that there's a policy problem that's up to Congress to fix. Is there any reason that we should think that footnote 13 and Anthony two suggested that 36, 64 age could be a proxy, uh, for finding of, but for causation in circumstances like this, because it speaks about apportionment doesn't cite the statute or in terms of how the government could satisfy its burden. Your honor. I don't, I don't think it, uh, is talking about 36, 64 age, you know, even though it uses the term apportionment, I just take that as, you know, apportionment in the general sense can refer to breaking something down into smaller pieces. If it did permit 36, 64 age to be used, um, as a proxy that would eviscerate Anthony one. I mean, it would just basically restore us to a paralyzed system where you're using your sense of, uh, relative culpability as a substitute for, but for causation. And that's exactly what Anthony one rejects. So I don't think that thank you. Thank you for your answer. Do we have any cases that tell us that 36, 64 age doesn't apply, uh, if there's not a conspiracy count, uh, your honor, I don't think there's any cases that say that, but I think it's implicit both. Um, otherwise Anthony one would come out differently. It just would overrule Anthony one to say that there's this alternative to, but for causation. And I think if you look at the restitution statutes as a whole, it just makes sense to read the loss reference in 36, 64 age to mean the loss that is ordered in restitution, right? So if, and of course, any restitution order requires proof of, but for causation. So I just don't think it gets make sense to think about dividing up the restitution order until there's a restitution order and any restitution order requires, but for causation, I see I'm out of time. Thank you. Judge Rossman. Did you have any additional questions? I don't. Thank you. Judge Murphy. No, I am not. Okay. Thank you. Ms. Uh, Ms. Shannon, uh, we'll hear from Ms. Ms. Walters. Thank you, your honor. Good morning and may it please the court. My name is Mary Walters and I represent the United States of America in this matter. There are two issues before the court today. First, given the integral role that the defendant played in this case to the court, clearly error in determining that he was able for cause of the victim's losses and that the victims would not have incurred a subset of the aggregate losses without the defendant's conduct. There is also a issue that is foreclosed by precedent in United States versus Burns. And we agree with the defendant's, um, acknowledgement of that foreclosure. Um, and in hearing the by counsel, we did in fact, in this case, uh, grow from Anthony one and two and did a portion the, but for cause of the defend or the victim's losses, which were caused at least in part by Mr. Cepuentes Lopez. It is clear from the record and the facts found by the court in this case that, um, and I'm, I'm thinking about the question about relevant conduct while the defendant did to one time raping each of the victims, uh, in this sex trafficking, um, uh, that was going on continually with different parties throughout, uh, the trailer that the victim and the mother lived in the victims and the mother, excuse me. Um, he also pled, uh, and in the documents that shows to acts such as harboring, providing, and maintaining. Where did he, where did he plead to that? I mean, his, his plea is, is, it seems pretty specific as to the two acts. And I'm very curious if you could direct me to exactly where those, uh, words appear. Yes, your honor in the, uh, indictment itself. Um, that is what is, um, uh, that's in the charging statute. Yes. And then the agreement. Yes, your honor. And, and looking to the, uh, the, the plea documents, I believe, uh, there is some, and if I may back up, yes, I'm not, I'm not sure that that's right. Uh, but we'll, we'll certainly confirm that before, uh, before, before assuming as much, let me ask you a question that you, you know, you started your presentation by saying we're on the clear air standard of review with respect to the evidence of but for cause. And I was struck by a colloquy that the court had with government counsel, where the court, you know, understandably as just back racks pointed out, as judge hearts, as the central points out, it's very difficult to, uh, to prove up the loss in these cases. And the, and the district court says, can I make a bottom line conclusion where I say, all right, even if I don't think all of these costs have been shown to meet the standard of, but for cause surely at least some amount would, and then make that finding of restitution. And the government says, yes, your honor. Well, that seems to be directly contrary to what Anthony one and two require. So help me understand how, uh, this doesn't teach this, this moment in the record. It doesn't teach that actually the district court agreed there wasn't evidence of, but for causation and was struggling as a legal matter with what to do about that. Your honor. I, I would say that the court did have, um, the court did struggle and we all because as, um, stated earlier in the, the dissent in Anthony, I believe it was Anthony, um, one by justice hearts. Um, this is a difficult thing to do. Um, however, the court record and the judge in this case, the district court judge did make a very good record about, um, how, what facts led to finding that this person was a, but for cause. And in was some restitution owed. And in fact, the defendant would be culpable for some of that restitution. However, uh, there was a dispute. The dispute was how much he would be culpable for in looking to the, the, but for cause, um, we do have evidence that a, but for cause was found in this case and, um, looking at Bostock versus Clayton County, um, it is a sweeping standard, uh, whether or not, but for causation has been found in a case. Yeah. I don't, I don't know, at least for myself, I don't know that anybody questions, you know, but for causation, but it's how much, you know, the future costs, I think it'll for me. So can I ask you a question, uh, Ms. Walters? So based on, uh, Dr. Messars, uh, testimony, uh, Dr. Fong, I think is a forensic economist. So I don't, I don't, we can include her, but I don't that has any, anything to the equation. So if I'm a district judge and I said, let's say take, take DH, one of the two girls, um, what mental, what analysis would I go through to say, okay, from Dr. Messars testimony or from his report, this is how much the future medical and psychological costs for DH are going to be, um, disaggregating what, uh, what Mr. Cifuentes-Lopez did with the rape of DH versus what the mother did, what the other defendant did in perpetuating sex, sex trafficking. How much of those medical and psychological expenses are tributable to Dr. Cifuentes-Lopez? I, as the district judge, how do I, what analysis do I go through to process Dr. Messars testimony to figure that out? Yes, your honor. And the, the reason why I know that, um, uh, your honor sounds skeptical of Ms. Wong's, um, apportionment, or at least how she plays a part in finding what losses are attributed, attributed directly to the defendant in this case. However, uh, Dr. Messar, uh, did an evaluation on what losses would be expected to, um, have, have occurred and what losses would be expected to be in the future psychological losses. And it's important that we find the whole of what the losses are before we decide apportionment. We can't decide who owes what until we decide what is owed. Um, and- Okay. Let's say it's a hundred million dollars. Uh, so let's say what, so, so, so what percentage, I'm, as a judge figuring out restitution, I have to figure out, to figure out the amount, what percentage of that million dollars true, the denominator has to be the, the, the total loss. So now how do I do that? As a district court judge, your honor? Based on Dr. Messar's and Ms. Wong's testimony, Wong's testimony. Yes, your honor. Um, finding that Dr. Messar did, um, determine the amount of loss, um, that would be attributable to all the, uh, trauma suffered, psychological losses of the victims. That is why the government secured the testimony and report of Ms. Wong was based on the guidance from Anthony 1 and Anthony 2. Um, we acknowledge in Anthony 1, there was no attempt to aggregate. And, um, in Anthony 2, the aggregation, uh, fell short in that the apportionment said that, um, it w- or that it was insufficient, that it did not identify a subset of treatment costs. So what Ms. Wong's report did was take the analysis of Dr. Messar, because as Ms. Wong stated in her testimony, she is not a psychologist. She is not there to opine on what treatment costs or what treatment would be needed. So therefore Ms. Wong, uh, did then apportion. And as was stated earlier, um, the court actually based on the record and, uh, decided that there would be a different apportionment, uh, when pushed back. Counsel, you, you keep using this word apportionment and I, and I must admit it confuses me because apportionment is not relevant in the but-for universe, right? But-for cause is a standard of proof for restitution and apportionment is relevant to 36-64H. Is that a cor- would you agree with, with what I just said? Yes, Your Honor. Okay. And so when you're saying apportionment, do you really mean that, uh, disaggregation from the whole in order to determine but-for cause for a particular defendant? Is that what you by using apportionment? And Your Honor, I, I apologize. I was talking about the, uh, the amount as far as, uh, after we've decided that he was a but-for cause regarding whether or not the defendant was a but-for. I see. Okay. Uh, that, that, that makes more sense to me. Um, Ms. Wong was asked if she could determine, if she could link an amount to Mr. Cifuentes Lopez's actions, and she said she could not do that. So if she was not proceeding from the point of departure of a but-for, uh, number, what do we do with whatever testimony, uh, and opinion she provided to the court? Your Honor, as far as, uh, Ms. Wong stating that she could not link an amount, um, that was, that's, that's the issue, right? That is, that is the issue that we run into in these cases, and she did attempt to, um, apportion out who would owe what and to the district court's, um, credit. They said, look, you, you went off of amount of time that this person is serving and the sentence that he received. Um, a lot goes into that, that you were not privy to, and then the district court took the facts relevant to, um, the, what would determine Mr. Cifuentes Lopez to be a but-for cause and said, okay, this is how you were involved, this is what Dr. Misar said the, the treatment needs would be, and the cost of those treatment needs, both current and future, and then Ms. Wong said, okay, based on, um, my analysis, this is what would be attributable to Mr. Cifuentes Lopez. Um, but yes, it is, it is hard to do, and that's why we are, are, um, asking, um, the court for the guidance in these cases, and since the, uh, since this case was submitted on the briefs, we have the results of Coulter, um, which may have, in fact, changed, uh, the analysis even more based on the fact that one of our, uh, minor victims did, had ADHD preceding being raped by Mr. Cifuentes Lopez and by others, and, uh, based on the ruling in Coulter, that may have actually caused a, a, another wrinkle, so to speak, in determining whether or not, uh, there was an appropriate amount. Is that why the government, um, wants it to, you know, to, should the appellate prevails? Is Coulter the reason the government is suggesting the remand should be on an open record? Yes, Your Honor. Um, moving to that portion, we, uh, we again acknowledge Anthony 1 and Anthony 2, uh, no effort to, to, to determine individual, uh, liability, and then as we go forward with the ruling in Coulter, um, this is an area of law that is definitely quickly developing, um, and, um, in a way that we would, uh, ask the court to remand, uh, with further guidance, uh, in order to allow the government to, uh, apply that guidance appropriately. What exactly is the guidance that, that you think is missing? Your Honor. As to what question, I guess, more, more to, to, to ask you more specifically, what specific question would additional guidance, uh, help, uh, the government or help, help parties in this case in, in, in, in response to what specific question? Yes. Thank you, Your Honor. Um, well, we do have, again, Coulter was after these briefs, so we do have that additional guidance now. Um, but also the fact that, um, the government believes that they have met their standard. Um, they took Dr. Miser's report, added, uh, not Dr., Ms. Wong's analysis, and we, because this is a moving target, because psychological losses are something that, um, is very hard to, uh, analyze and identify with exact precision, we have a situation where, um, if we did not get it right, we would like to know why, and we would, uh, welcome any additional guidance, um, to try to these victims whole, um, after being raped. Counsel, do you agree with, uh, Appellant's, uh, position that, uh, as, as I've understood it, that 3664H, uh, really doesn't have anything to do with, uh, cases like this where you only have, um, an individual, you don't have multiple defendant conspiracy liability? Um, yes, Your Honor. We, we originally did ask for but understand, based on our theory of the fact that this was all happening at the same time, and there was some, um, overlapping culpability, but, um, based on the, looking at it as just the, I say just, I, I don't mean to minimize these two instances of raping these two children, um, that we, we would agree. Yeah, we would agree with what the, that, that 3664H, uh, apportionment doesn't apply in cases where there's not conspiracy, a conspiracy count? Um, oh, I apologize, Your Honor. I, I misunderstood. I apologize. It, um, I think it could, but, um, I understand the, the Appellant's, um, argument. Well, uh, I, I just want to make sure I understand, you know, you, generally we address the, the arguments that the parties are making. Are, are you making an argument that 36604H has a bearing or, or not? Um, we did ask, I will say yes because we asked for joint and several liability. However, I do understand the court's ruling in this case and we are with the record that we have now, um, as far as Mr. Cifuentes-Lopez, Your Honor. Um, I, I see I'm, I'm close to time. Um, at this time I would ask for the court to affirm the district court's ruling. Can I ask you one other question? Of course, of course, Your Honor, I just thought of something connected to what we were just discussing. Uh, in the event this case gets remanded on an open record as the government, uh, seeks, um, and let's say that there is, uh, proof put on to establish the but-for loss, uh, for Mr. Cifuentes-Lopez. At that point, if, if the district court had that record and said, yep, I see it. This is the number I'm gonna, this is, this, this is the restitution I've determined. Um, would 3660-4-H apportionment have any role to play after that initial but-for loss finding was made? After the initial but-for loss finding was made, um, I think it could, Your Honor. Um, but I would, I would want to hear the testimony and, and see the, see the record at that point. That's fair. Thank you. Um, thank you, Your Honor. We, we would ask for, uh, the, this court to affirm the district court's ruling in this case. Judge Rossman, did you have any other questions? I don't. Thank you. Okay. Uh, Judge Murphy? I have none. Kevin, uh, did Ms. Shinn have any additional time left? No, she didn't. Okay. Thanks, Kevin. Uh, uh, very well presented by both sides. This matter will be submitted. Thank you. Thank you.